and Mr. Martinson. Good morning, and may it please the Court. My name is Gavin Martinson, and I represent Appellant 20-20 Communications in this appeal. 20-20's arbitration agreement contains an express class action waiver, and the recent Supreme Court decision in EPIC systems has undeniably established that such class action waivers are completely enforceable and totally valid. And so... Was the class action waiver in EPIC the exact same wording as the one in this case where it has the phrase, to the extent permitted by law or whatever? No. No, it wasn't. Don't you think that makes a difference? I don't think so, Your Honor. I think that what matters here is that the agreement, including the class waiver, is enforceable to the maximum... To the extent permitted by law or whatever. Yes, Your Honor, and under the current EPIC systems law, that, you know, to the maximum extent permitted by law establishes that the class action waiver is enforceable under the maximum extent permitted by law. Does the maximum extent include both State and Federal law? Yes, Your Honor. So it would include California law? Well, it would include California law, but the EPIC systems decision is the maximum extent. It is higher than the California law on this issue. EPIC didn't concern a California law, did it? No, it did not, Your Honor, but I think it's important to note that the arbitrator in this case also did not consider California law in determining what the maximum extent permitted by law was. The arbitrator who was in California relied solely on the Ninth Circuit decision, which EPIC systems expressly overturned. What is the status of Blivens today? I understand there's an interlocutory appeal to our Court on a preliminary injunction. No, Your Honor. That appeal has been dismissed. The panel in that case determined that it was an interlocutory appeal, that it did not have jurisdiction to hear. So the case has been sent back to the district court, and there is now a new motion for preliminary injunction and a renewed motion to dismiss by the defendants that is pending before the district court in that case. And clarify for us why we have this bifurcated, why we have these two proceedings both, as I understand it, concerning the same question of law. What is the distinction here? Why are we in this posture? Yes, Your Honor. The current case is a direct appeal or motion to vacate a clause construction award by the arbitrator. Arbitrator in California? Yes, Your Honor. The Blevins case involves an action for declaratory judgment and injunctive relief seeking the district court to declare the rights of the parties and to enjoin any class arbitrations from proceeding according to the terms of the MAA. That's my confusion, I suppose, as to why we're in this posture. Why wasn't this just kept in one proceeding? Well, Your Honor, this proceeding stems from an arbitration. I understand that. And thus, when the arbitrator issued his clause construction award, 2020, at the arbitrator's request is probably too strong, but the arbitrator permitted the parties then to appeal that decision to the district court, and so 2020 exercised its right to do so. And the posture, while different, and Your Honor is correct that many of these issues are similar, it's important, though, to note that the gateway issue of arbitrability, which is central to this appeal, comes to the court directly because we have an arbitrator who has decided improperly that he has the authority to decide the availability of class arbitration. What exactly is your argument? I want to isolate with great precision here. Is your argument that the arbitrator lacks jurisdiction to decide the class arbitration issue, or is your argument that the arbitrator interpreted the class arbitration language correctly or incorrectly? Yes, Your Honor. I think that both of those issues are at play. But to answer your question directly, the first issue that you raise is the principal issue here, because we don't get to the second issue unless a court determines that the parties have agreed clearly and unmistakably to delegate that question of class arbitrability to the arbitrator. But that has to be a court's decision first. So you submit that both the jurisdictional, what I'll call the jurisdictional issue and the interpretive issues, both are in this proceeding. Yes, Your Honor. Before this Court. Yes, Your Honor. I thought, though, that only the second issue was presented to Judge McBride below in this proceeding. Well, Your Honor, I — Because the first issue is only before Judge Means. Am I — No, Your Honor. Both issues were presented to Judge McBride, but I can understand your confusion reading — reading Judge McBride's order in this case affirming the arbitrator's clause construction award. He does not address the gateway issue, even though that issue was presented to him as part of the motion to vacate. Well, isn't that because Judge Means has it? Well, Judge McBride may very well have deferred to Judge Means on that issue, but — but the arbitrator and, by extension, Judge McBride in confirming the arbitrator's award did not have authority to even reach the merits of the class arbitrability issue until that first judicial issue of whether the parties have clearly and unmistakably delegated that issue to the arbitrator had been decided. Do you acknowledge, though, that this is somewhat of an awkward vehicle to reach the first issue, given that McBride didn't really address it, perhaps because Judge McBride's deferring to his colleague, Judge Means? Why not wait for Judge Means to rule, and then we can have appellate discussion at that point? Yes, Your Honor. I do agree with — with you that this is an awkward vehicle. But I believe that the reason it's awkward is because the arbitrator acted outside of his jurisdiction. That's the principal reason that we have these gateway issues of arbitrability, is so that we're not in this awkward position, so that it is a court who's deciding the gateway issue. And then that appeal can go forward. But when you have an arbitrator that oversteps his bounds and decides that issue, then we have no choice but to be in this awkward position. Did you request a stay in Judge McBride's court? Not in Judge McBride's court. We certainly requested a stay in the arbitration so that the court in Blevins could decide the issue before the class arbitration proceedings. Does Blevins grow out of this same — or is Blevins a different employee? I know this is Crawford. Who is the main plaintiff in Blevins? Crawford is one of the plaintiffs in Blevins. There are some 18 defendants in Blevins. Again, I don't know how we got in this position. Did you — I mean, was there any simultaneous request for a stay or for consolidation or something? So we don't — we kind of got the cart before the horse. Well, Your Honor, like as I mentioned, we certainly requested that stay in the arbitration because we don't want the arbitration to go forward until a court has decided that gateway issue of class arbitrability. And if that decision is made by Judge Means in the Blevins case, then that would be fine. And we certainly have asked the arbitrator to not move forward until a court can decide that issue. Because it now would seem that Crawford, this case, has leapfrogged ahead of Blevins. Yes, Your Honor. And that almost rendering Blevins moot. Well, I think it depends on how the court rules, Your Honor. Which court, this court? This court, yes, Your Honor. Certainly, depending on how this court rules in this case, it would have an impact on the Blevins case, certainly. For example, if the court rules that the gateway issue of arbitrability must be decided by a court in the first instance and not by the arbitrator, certainly that would then bind the Blevins court, Your Honor. And to Your Honor's point, 2020 is certainly amenable to having the Blevins court decide the issue first. The problem is, is that the arbitrator is moving forward with a class proceeding. And what we can't have is a class proceeding leapfrog the decision on the gateway issue, or else we're in the same position that, a very similar position, that the court in the Seventh Circuit just decided in Harington. I think I understand that 2020 is kind of in a jam and trying to figure out whatever it can do. So I get that. Let me ask you what I'm sure is an unfair question. Do we know when Judge Means is going to decide the jurisdictional issue? No, Your Honor. It's been pending a while now. Is that right? It has. And we have asked him to rule quickly, but I don't know to answer your question. So what concerns me is just simply that we don't really have the authority in this proceeding to reach the issue in Judge Means's court. Do you have any authority that can comfort me that we do have the power to do the jurisdictional issue as well as the interpretive issue? Yes, Your Honor. I'll point to the Harrington case in the Seventh Circuit again. In that case, which I know Your Honors have seen, the Seventh Circuit addressed a case that was in a very similar posture to this one, and it addressed both the Epic Systems issue. The Epic Systems decision was decided while the appeal was pending from the district court's affirmance of the arbitrator's award. And then it also addressed the jurisdictional issue and decided that the court must be the one to decide that gateway issue of class arbitrability in light now of Epic Systems. But was there a parallel action in Harrington? No, Your Honor. That's a problem we have. We've got a parallel action. We've got something going on in Blevins which has the issue of the gateway issue. And now this is leapfrogged ahead of it. I just can't understand how we're in this posture. I can't understand how the parties allowed this to happen. Well, Your Honor, as I mentioned before, I believe to answer your question why we are in this posture, we can't have this class proceeding continue on the track that it's on without a court determining— It's not going anywhere while this is on appeal, is it? Yes, Your Honor, it is. Since the Epic Systems decision has been entered and since this appeal through the district court and now to this level has been pending, the arbitrator has conditionally certified a class and has ordered a class list to be distributed, and it is moving forward. You need Judge Means to rule. Absolutely. Well, Judge Means or this Court, Your Honor. I do submit that this Court has the ability to decide that issue of jurisdiction, especially now in light of Epic Systems. I mean there is no basis in law for 2020 to be forced into a class arbitration now that Epic Systems has been decided and there is an express— All right. But do you have any case that has this procedural vehicle concern that I have? I'm sorry. Do you have any authority that says that the vehicle problem that I have is not a problem? Well, I believe the Harrington case addresses that, Your Honor. That case is in the same posture as ours. I don't recall it having this sort of two-track system where there's one proceeding in a district court challenging jurisdiction, arbitration jurisdiction, and another one, separate one, only dealing with the rightness or wrongness of the interpretation. Understood, Your Honor. No, I'm not aware of any case that has those dual proceedings. What I was trying to address is that the Harrington case does, through this arbitration appeal mechanism, decide that the jurisdictional issue, as you put it, that gateway issue, must be decided by a court in this— I'm not suggesting that Federal courts can't do this. I'm suggesting that the claim hasn't been presented. I mean we can't grant relief in a breach of contract suit if it's a tort case, right? Well, I understand, Your Honor. My point is that that claim has been presented here, just like it was in Harrington, that through the appeal of an arbitrator's award, the Harrington court decided that that jurisdictional issue could be reached and did reach it and ordered that a court must decide that gateway issue. You're submitting that you presented both claims to Judge McBride. Yes. And McBride simply only addressed the second issue. Yes, Your Honor. So you want this panel to, if nothing else, stay the ongoing arbitration proceeding? Yes, Your Honor. If nothing else, I would say yes. I believe that in light of EPIC systems and the Harrington case and the cases that have been cited regarding, as Judge Hope puts it, the jurisdictional issue of this gateway issue of arbitrability, that there's no basis for the class to proceed. Well, in fact, the parties agreed to the contrary, didn't they? Yes, Your Honor. They expressly agreed to the contrary. And there's no dispute now in light of EPIC systems that that agreement is enforceable. All right. Thank you, Mr. McBride. Thank you. Mr. McBride, would you clarify the agreement? The agreement between the parties was? Regarding the class waiver, Your Honor? No, sir. The question you just answered for Judge Smith. He said the parties agreed on that. Yes. And I want to know the exact agreement. Yes, Your Honor. The parties agreed that to the maximum extent permitted by law, that an arbitrator did not have the authority to join proceedings in a class or collective action. All right. I thought you were referring to some agreement between the parties about trying to make to give some organization to this two-pronged proceeding, this parallel proceeding. So I want to make sure I was not missing something. Thank you. I see my time is up. I mean, just to save time, I have the language here in front of me, which is the parties agree that this agreement prohibits the arbitrator from consolidating the claims of others into one proceeding to the maximum extent permitted by law. This means that an arbitrator will hear only individual claims and does not have the authority to fashion a proceeding as a class or collective action. Yes, Your Honor. That's the language I assume you rely on. That is the language. But there's no agreement between the parties on the procedure where this double-track procedure we're involved in. No, not specifically, Your Honor. I see my time is up. Just to answer your question very directly. You can answer my question. Yes. The parties did agree that they would move or could move to appeal or vacate an arbitrator's decision in a court, Federal or State, in Tarrant County, Texas. So to that extent, they have agreed that this posture is appropriate. Thank you. Thank you, Mr. Martinson. You've saved time for rebuttal. Mr. Frisch. Good morning, Your Honors. May it please the Court, Andrew Frisch for the appellee, Lennox Crawford. I think that's important. I hope you would agree that this is an absurd result here, given the language that I just quoted. First, I'm sure you will agree that arbitration is a matter of contract or agreement. It's not something that people have to do unless they agree to it. Certainly I would agree with that, Your Honor. And they agreed to the language that I just quoted, and yet we have an arbitrator proceeding with a class action. That's got to be an absurd result based on what the parties said. I disagree with that, Your Honor. I think given the case, the clear binding authority on the arbitrator at the time that the decision was made, and that's the relevant inquiry here, and the language of the arbitration agreement itself, he interpreted the arbitration agreement in line with binding law. He — if you look at his clause instruction, I know you all have, he cites specific clauses in the arbitration agreement that was drafted by 2020 and was intentionally drafted to be equivocal. This is not, to answer Judge Barksdale's question, this is not like Harrington when there's an unequivocal class waiver in the agreement. 2020 understood that this was a contentious issue at the time that they drafted their mutual arbitration agreement, and so what they did was they said, well, we're only going to have a class waiver to the extent that it's permitted by law. Just to be clear, that's just extra language, right? I mean, let's say they had not included that language. Would that mean that the contract would trump law? Of course not. Well, no. I think to the extent that they didn't include that language, then at the time that the decision was rendered, the arbitrator would have lacked jurisdiction over the proceeding in Hull because it was taking place in California within the Ninth Circuit. The Ninth Circuit case — The parties are agreeing to bar class arbitrations to the maximum extent permitted by law. What that tells me is the parties agree that they do not want class arbitrations, and that the only time they will have it is when the law forces them to do it. I don't — that's not how I read it, and certainly I think that's open to interpretation, which is really what the issue is here. The question is not whether the arbitrator got it right or whether he was wrong and misunderstood the facts or misconstrued the arbitration agreement. He definitely unquestionably looked to the language of the agreement itself in rendering his clause construction and underbinding supreme court authority, certainly court — dozens of cases from this Court, when he does that, whether right or wrong, whether he made a mistake, whether you disagree, I disagree, counsel for the appellant disagrees with the ultimate result. And he did acknowledge that partially what he's doing here, or what 2020 is doing here, is they take issue with the interpretation rendered by the arbitrator. That's simply not something reviewable by the district court below or by this Court. Well, let's look at the contractual provision. I've already read what the provisions are. Let me just tell you that one of the ways I approach cases that come before us is that my — my antenna goes up any time an appellant relies substantially on a case that appears to be right on point and there's no response by — in the appellee's brief. In this case, the appellant relied on, in my opinion, in Delta Queen's steamboat, and they cited it three times, and you didn't mention it. Now, Delta Queen, which has stood the test of time and continues to be cited by our Court after 30 years, says an arbitral action contrary to express contractual provisions will not be respected. And that's exactly what we have here. It's an arbitral action contrary to express contractual provisions. So under Delta Queen, which is still binding law in this circuit, and you didn't refer to it, again, by not referring to it, I have to — I have to assume that you see it as adverse authority that you don't want to highlight. But anyway, what do you do with Delta Queen? Well, Your Honor, I think we did address it, maybe not by name, but we consider this to be a factual issue. So as you said, the holding of Delta, of your court in Delta, was if there's an express contractual provision and the arbitrator acts contrary to the express contractual provision, that's not — that's going to be exceeding his authority. That's not what we have here. Here, we have an equivocal class wavering. They did not answer Judge Ho's question. Well, excuse me. I'm interrupting you, and I apologize. But what's equivocal about the words, does not have the authority to fashion a proceeding as a class or collective action? What's equivocal about that? I think you have to read it as a whole. Clearly, this Court's case law has always indicated you can't just ignore, you know, fragments or things after a comma. Reading it as a whole, it's clarified by the language to the maximum extent permitted by law. In the Ninth Circuit at the time that — Congress passes a statute, and the statute says we want X. We absolutely want X result, so long as it doesn't violate the Constitution. Is that unequivocal? Is that equivocal in your mind? It wants X, but it doesn't want to violate the Constitution. Well, I think to the extent that it violates the Constitution, certainly it wouldn't be — that statute would not be constitutional. And so that's basically what we have here. The Ninth Circuit at the time this was decided, had decided that to read this as an express class waiver wouldn't — you couldn't do that here because that would be illegal. So they said we have — since it would be illegal, the extent — the maximum extent permitted by law in this proceeding, the Ninth Circuit, doesn't permit a class waiver, so we have to read it to permit a class to proceed. And that's exactly what he decided. I don't think we can safely just ignore his interpretation or the language in the agreement that he relied upon, because this is unlike cases, for example, where they relied on — by the appellant. This is unlike any — Stolt-Nielsen. This is exactly like Oxford, a case that the Supreme Court decided where they said this may be a crazy result. We may — everyone in the courtroom may disagree with it. You know, we all may think this was a mistake that was made. Clearly, this arbitrator had no idea what was going on, didn't construe the law properly, didn't construe the facts properly. But that's really not what the issue is when we come here today before the Court. The issue is, did the arbitrator at least arguably interpret the party's agreement and apply the law as he understood it on the day that he did? And there's no question that he did. If you look at the — — Would you acknowledge that it would be a pretty weird waste of time to let the Crawford proceeding, the arbitration, move forward under this class arbitration theory only for them to learn that Judge Means has found no jurisdiction whatsoever, and then to assume, you know, it's affirmed by this Court? That whole Crawford proceeding would have been a complete waste of resources for the company, for you, for your clients. Is that a fair statement? — In other words, don't we want to know the jurisdictional issue first? — Yes. I think we do, though, Your Honor. Judge Means already denied that these — although this Court found that it lacked jurisdiction over the initial appeal of the interlocutory issue that Judge Means had resolved, Judge Means has already resolved the jurisdictional issue. He said in his order that the arbitration agreement clearly delegates the authority to an arbitrator and not the court. And in fact, as he — — So this case is ready for appeal to this Court? — It's not, but it's basically just a formality, which is something that 2020's — it wasn't Mr. Martinson, but his prior account — — So let's take out the Judge Means piece. Wouldn't — wouldn't it be helpful to know from this Court whether or not there is jurisdiction? And if this — I'm not prejudging it, but if this Court were to determine in that appellate proceedings that the arbitrator has no business doing this, then the Crawford arbitration would have been a complete waste of time. That's — that seems fair, right? — I don't think that's — I think that's a question that's not really proper in this context, because that's not — — I'm just actually asking you to acknowledge common sense. — I'm sorry? — I'm just asking you to acknowledge there's no business having a Crawford — — If that had happened, I certainly believe that it would have foreclosed any argument about what the Court might do, yes. However — — Why not just stay the — why not just stay the proceeding? Let us figure out the jurisdictional issue first, one way or the other, before  — Because it's already been resolved, and — — Not by this Court. — I would also point out that appellant — — It hasn't been resolved by this Court. — That's true. It has not been resolved by this Court. But I would note that Judge — I'm sorry, that the appellants previously acknowledged that the decision that Judge Means would make in the Blevins decision was binding on the parties and on the arbitrators. Judge Means subsequently said that it was for an arbitrator and not the Court. And that's consistent with — that's really not what we're here, obviously, for. We're not here to talk about the underlying merits of the case. But that's consistent with Fifth Circuit authority, longstanding Fifth Circuit authority. Here we have a clear delegation of all issues regarding the meaning of the arbitration agreement and arbitrability issues, including class arbitrability. We have a specific incorporation, an explicit incorporation of the AAA's rules. And there's a broad arbitration scope. Any one of those things taken alone under this Court's binding authority means that an arbitrator and not the Court has the authority to render a decision on class arbitrability. So it's really just a formality. And — Roberts. Would it be fastest for us, this Court, in this case, this panel, to go ahead and deal with the arbitrator's authority as well as the interpretation question? Well, I think in so doing, I think that is certainly something — I think that's not properly — I wouldn't frame the issue that way. How I would frame it is, did the arbitrator look at the language of the agreement itself and construe and interpret the language of the agreement itself to determine that he had jurisdiction to resolve class arbitrability? Because if he did, look, if he did interpret the agreement in that respect, that's the issue before this Court. And this — and there's case law exactly on point on this issue where the Fifth Circuit has said, if it's even arguable, just like the clause — the clause construction on class arbitrability — I'm sorry, on — on class arbitration, this Court has this binding case law from this jurisdiction that says, when an arbitrator is looking to an arbitration agreement and construing and interpreting the arbitration agreement to determine whether he has or she has jurisdiction over an issue in the first instance, that also is subject to the same deferral standard that would apply where an arbitration award is not going to be disturbed if the arbitrator was even arguably construing the language in the agreement, and here he was. That — so that issue is in that context the issue before the Court. Kennedy, you have to layer over that, though, what Delta Queen says, which is an arbitral action contrary to express contractual provisions will not be respected. And so, I mean, there's no equivocation about this language in the agreement that the — that the parties signed. So — so there's no way that this arbitrator was giving interpretation to the contractual language because it's — it's contrary to what the parties said under Delta Queen. I'm not following you, Your Honor, because I think you're — again, there was this language where 2020 hedged when they drafted the agreement. They recognized that there were jurisdictions in which a class waiver was illegal. And so they essentially said, if we're in a jurisdiction where this would be illegal, then it's not a class waiver. It's only to the extent — maximum extent permitted by law. And by implication, this is exactly the language that the arbitrator looked at construing the arbitration agreement, interpreting it as it was required to do under Oxford. He said, well, this recognition, where they — they recognized that it may be illegal, and if it's illegal, then it's not going to be valid, or we're not going to have a class waiver, if that's exactly what he decided. It would be — to read it that way — You don't — you don't dispute that this proceeding, the arbitration proceeding, that is, you don't dispute that that's subject to the latest Supreme Court precedents? Well, I — I actually — in our brief, I think the final point in our brief, we addressed the only cases that I could find that were on point. There's one from the Ninth Circuit, which would be binding on this proceeding pursuant to the arbitration agreement, and there's a second one in the Second Circuit. Both of those cases hold that an intervening change of law by itself is not a basis to vacate an arbitration award. So, in other words, they both stand for the proposition that the review that the court has, the district court initially and now this court, that it has over an arbitration award is based on the facts and the law as it existed at a fixed point in time when the arbitration award was rendered. And that — that law is clear. I've never seen any other — I did exhaustive research. I could only find cases that stood for that Yeah. And there was a case in the Ninth Circuit, the Wolf case that's cited in our brief. It's almost an identical procedural posture to here, where the losing party in arbitration, the law changed. It was a California Supreme Court case that changed the law that was applicable to that proceeding, arguably. The losing party in the arbitration, and it was a clause construction — class — clause construction issue about class arbitrability and the ability to proceed in a class proceeding. And the Wolf court said, we can't go back now and say — and apply the laws that exist now to what happened six months or a year ago when the arbitrator was actually rendering his award. All we can do is look to see, did the arbitrator interpret the party's agreement in line with what he understood the law to be at the time that he rendered his award? That's an essential function of arbitration. Arbitration is not court. 2020 wanted this to be an arbitration. We — we proceeded in arbitration. They lost. And now they're saying, well, now we — we wish we never were in arbitration. Now we want to have the court decide this issue, that we drafted an agreement that we required Mr. Crawford to have arbitrarily decided by the arbitrator. We only did that, basically, because we thought we were going to win. But we lost. And it wasn't as clear, apparently, as we thought it might be or could have been. We should have drafted a better thing. But give us a second chance in court. Give us a second bite to Apple. And the whole point is — I understand your point. — that's not permissible. Did I hear you correctly? I don't want to put words in your mouth. I think I heard you stating earlier two things. One, that Judge Means has basically already decided the jurisdictional issue. Yeah, as I understand it, yeah. Okay, so that's done. That's — that's right for appeal. Well, it's not right for appeal because this court found there wasn't a final decision. So — but co-counsel for Mr. Martinson did acknowledge here that he believed there's a mere formality, as do I, because the issue has already been — the legal issues have already been resolved. So now we just have a motion — our motion in the Blevins case, meaning the defendant employee's motion to dismiss — He just needs to dot the i's and cross the t's. Yes. He's reached a substantive decision. All right. The second — That's your understanding. That's my understanding, yes. I mean — Are you involved in the Blevins decision? I am. Proceeding? I am. I'm counsel for the defendants in that proceeding. The second thing I want to confirm, what you said earlier, is that both issues are before us today. Both the — did the arbitrator have the power to decide arbitration, class arbitration? And second, did that — was that interpretation correct? I think I heard you say that both are in play today. Yeah, I would — as I said, I think, earlier, I would frame the first issue slightly different because I think the issue is — But they're both before us today, is the point. In some context. But I think the context that it's before you are — they're both in the same context. The question is, did the arbitrator look to the language in the agreement to determine or interpret the agreement to determine that he had the jurisdiction, rather than, do you think that he had jurisdiction to do it? So you don't think it's a gateway issue, then? You don't think that this language in the clause is a gateway issue that a court decides? Well, I think that if we were in court, like the Harrington case was, the Fifth Circuit has said, just like every other circuit, if there's clear — you know, then it could be an issue brought to the court's attention unless there's clear and unmistakable evidence in the party's agreement indicating that the party's expected or had agreed that an arbitrator would resolve the issue. So if the issue isn't — is it a gateway issue or not, in my mind, I think the issue is, did the parties agree to arbitrate arbitrability and class arbitrability? And here, they clearly did. There's a delegation clause that specifically says in the arbitration agreement that the parties are going to defer to or delegate to an arbitrator all issues regarding the meaning of the arbitration agreement and, you know, and all issues regarding arbitrability. So this is a class arbitrability issue. There's really no question in my mind that's clear and unmistakable by itself. But we also have, in addition to that, the incorporation of the AAA's rules, which this Court has repeatedly held by itself would mean — would render class arbitrability something subject or delegated to the arbitrator. And then there's this broad scope of arbitration clause as well. Any one of those three things by itself, this Court has repeatedly held would give jurisdiction solely to the arbitrator to resolve class arbitrability. So I — Roberts. You acknowledge, of course, that the FAA allows courts to make sure arbitrators  That's just quoting the statute. Yeah, I — yes. And the statute — and the agreement says arbitrators shall not have the power — here it's the authority, but authority and power are the same thing. The arbitrator does not have the authority to do class arbitrations to the maximum extent provided by law. What's the difference between these two provisions? I mean, one talks about power, one talks about authority. Why can't we exercise our powers under the FAA to decide whether the arbitrator is violating his powers? Well, under PEDCOR, this Court's binding authority, PEDCOR stands for the proposition that even if this Court were to agree, as Judge Smith implied before, that there's a, you know, an explicit class waiver and then that the maximum extent permitted by law of that language doesn't matter, under PEDCOR, which was reaffirmed just a couple of years ago in Robinson by this Court again, even if a court believes that there's a clear class waiver, this Court's binding authority requires that the issue to be resolved by an arbitrator and not the court if there's a delegation of authority regarding class arbitrability. And that's — I agree with you. The — I think it's an Oxford case. The Supreme Court is quite clear it could be the worst interpretation in the world. I get that. But this is a power question, as I understand it. This is that gateway jurisdictional question. Well, I think you have to read the arbitration agreement as a whole is how I look at it. And I think because the parties explicitly delegate the authority for an arbitrator and not the court to decide the issue of arbitrability — It says specifically that the arbitrator does not have the authority. To the — to the extent permitted by law. That's your focus, then. It's the maximum extent language that you think changes the meaning of the — Yeah. And candidly, I think I said this before, I think if there wasn't that clarification in the arbitration agreement, likely what would have happened that we will never know is that the Crawford arbitrator would have found that the AAA lacked jurisdiction over the proceeding in its entirety because he would have said this is illegal. I have to read it. If it was an explicit class waiver, he would have said this is illegal, and so we can't go forward. The AAA lacks jurisdiction. This is an illegal arbitration agreement resolving the issue of arbitrability that was delegated to him. Counsel, you were earlier, several minutes ago, saying that 2020 was happy when they changed their mind, and that's why they're in court. Do you recall that? Yes. Those comments? Yes, Your Honor. And that's — where's that in the record? I'm sorry? Where is that in the record? Where is that that they're unhappy now, and that's why they're here? Where is that in the record? Is that just your extrapolation? I'm sorry. Is that just your opinion? As I read what they're saying, and I think their counsel today acknowledged that he thinks this is in large part an interpretation issue and a direct answer to Judge Goldstein. No. My question is, you're saying that 2020 was happy with the agreement, and now they're not, so that's why they're in court. In other words, they're — they wish they hadn't entered into it, so now they're trying a different tact, and they're in court. And I'm simply asking you, is that in some affidavit or deposition? No, Your Honor. That's just your interpretation. That's my interpretation. Well, in the future, you might — in the future, you might want to confine yourself to the record and not to your opinions about the state of mind of your opponent. I think that would be a good tact to follow. That's a fair point, Your Honor. I would just point out that they were the ones who unilaterally drafted the arbitration agreement, requiring all these things to go to arbitration, and I was kind of connecting the dots. Now we're in court, and they sued Blevins, Crawford in a consolidated proceeding, and they're claiming — ironically, they're claiming there can't be any consolidation. But the point is, it's irrelevant what they want or what they thought. We're going with the document. I'm just suggesting to you as a lawyer, when you're arguing in an appellate court, stick to the record. Understood, Your Honor. And I — to clarify — You don't need to clarify for me. I know exactly what you're doing. I was citing to the language in Oxford, which is I think this is a virtually identical situation here. All right. Thank you, Mr. Frisch. Mr. Martinson, you saved time for rebuttal. I'd like to quickly address the point that it doesn't really matter here whether this is a gateway issue. It absolutely matters. It's probably the most important thing here. And as Judge Ho pointed out, this is a power question. It doesn't matter whether the arbitrator arguably interpreted the agreement. If the parties never gave him the power to make that interpretation to begin with and there's no deference that's due the determination of that gateway issue, and there's no deference — But, Your Honor, the only clause you rely on, as I understand it, to say that it's a gateway issue is the clause at issue. There's no separate clause, or if there is, cite it to us. There is no clause in the MAA that specifically says that this is a gateway issue. Right. But every court who has decided this, which the Harrington Court just pointed out, who's decided whether an issue of class arbitrability is a gateway issue, has found that, in fact, it is. And that issue, therefore, must be decided by the courts. So while there is no provision in the agreement that says this is a gateway issue, the case law on point certainly — But, again, Harrington doesn't include the clause to the maximum extent permitted by law. No, Your Honor. You're correct. And I think, to Judge Ho's point, that clause does not change materially our interpretation here, especially in light of the Epic Systems decision. So if we decide to stay ruling on the merits pending the Blevins action, what relief do you want from us other than if we make that decision? Well, if this court now decides that all it's going to do is stay the arbitration, then that relief in and of itself would be acceptable. It's not what we're looking for here. What we're looking for, because we believe the issues are ripe, is first a determination that that gateway issue of arbitrability must be decided by a court in the first instance. And that court will determine whether there is clear and unmistakable evidence that the parties have delegated it to the arbitrator. But the arbitrator can't make that decision in the first instance. And that gateway issue must be decided by a court at some point. As we've said before, we believe that this court right now can decide that issue and should decide that issue. But if the court disagrees and determines that it would rather let that issue play out in the Blevins matter and wait for that issue to be final and then appealed back up, then staying the class arbitration would be the relief that 2020 would request. 2020 wants to arbitrate. You just don't want to arbitrate. Oh, absolutely. You just don't want to arbitrate in an unauthorized class format. Absolutely. 2020 absolutely wants to arbitrate according to the terms of the arbitration agreement. And the real sticking point here is that gateway issue. And the first options case from the Supreme Court in 1995 and also the Oxford case in footnote 2 both noted that when you're dealing with a gateway issue of arbitrability, there is no deference that goes to the interpretation by the arbitrator. So the Oxford case is not directly on point. In the Oxford case, the parties specifically agreed to allow the arbitrator to determine the gateway issue of class arbitrability. And then the court dropped in footnote 2 the specific description of what would happen had the parties not agreed to allow the gateway issue to go to arbitration. And it noted that that determination of the gateway issue of arbitrability, if an arbitrator were to decide it, would not be given any deference, that the court would review that decision de novo. And the first options case from the Supreme Court in 1995 said the same thing. It didn't use the words de novo. It said that the review would be independent. But the point is the same, that when an arbitrator decides a gateway issue of arbitrability, a power question, that does not do any deference because that is an issue that a court must decide. Now, if a court decides — To be clear, footnote 2 also acknowledges the Supreme Court's not decided. Absolutely. Yes, Your Honor. That's still percolating at the circuit level. It is. It is. And as I mentioned before, the Harrington Court, this recent Seventh Circuit case, lists all of the courts of appeals who have addressed the issue, and they have all come out the same way. This is a gateway issue of arbitrability for the courts to decide. Like six different courts have said that. Yes, Your Honor. About six, anyway. Yes. And none have said it — none have gone the other way. All right. Thank you, Mr. — Thank you. But just to beat a dead horse, because this is on the record, but none of those courts of appeals decisions have this maximum extent permitted by law? Correct, Your Honor. All right. Thank you, Mr. Martinson. Thank you. The case is under submission.